THE STATE OF MONTANA, Plaintiff and Respondent, v.
LYNN PERKINS, Defendant and Appellant.

No. 11657.
Submitted June 10, 1969.
Decided July 17, 1969.
457 . P.2d 465

William Dee Morris, argued, Helena, for defendant and appellant.

Robert L. Woodahl, Atty. Gen., Helena, John C. Weingartner, Asst. Atty. Gen., argued, Helena, Oscar Hendrickson, County Atty., Chinook, for plaintiff and respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Appeal from an order entered in the district court of Blaine County denying defendant's petition for postconviction relief.

This matter was previously before this Court on a motion made by the State to dismiss an appeal, and on December 13, 1967 we issued an Order which read:

"On November 30, 1967, plaintiff and respondent, The State of Montana, filed herein a motion to dismiss the appeal of the defendant and appellant, and caused service thereof to be made upon the defendant and his counsel.

"It appears from the motion that the defendant was convicted on May 9, 1967, in the district court of Blaine County of the crime of grand larceny on two counts and on May 11, 1967, he was sentenced to a term of imprisonment in the State Prison on each count; that thereafter and on the same day, May 11, 1967, defendant made a motion for a new trial which was on that date denied. Extensions of time were sought and granted for the purpose of preparing and filing a bill of exceptions but no transcript on appeal has been ordered so nothing has been done towards the settlement of a bill of exceptions. Defendant has been at all times represented by counsel of his own choosing.

"Section 94-8105, R.C.M.1947, provides that an appeal from a judgment in a criminal case may be taken within six months after its rendition, and from an order within sixty days after it is made. The time for taking an appeal from the judgment in this matter expired on November 11, 1967; the time for taking an appeal from the order denying the motion for a new trial expired July 11, 1967.

"On November 16, 1967, defendant, through his counsel, filed a Notice of Appeal, stating that the appeal is taken from the judgment of conviction and the order denying the motion for a new trial. By virtue of the law hereinbefore cited the notice comes too late, defendant has permitted the time for filing an appeal to expire.

"IT IS THEREFORE ORDERED that the motion to dismiss this appeal be, and it hereby is, granted and this appeal is dis-

missed; the order admitting to bail pending appeal is dissolved, and the district court is directed to forthwith order defendant into custody and order his delivery to the State Prison at Deer Lodge, Montana, in accordance with the terms of the judgment heretofore rendered in the district court.

"Should defendant, after he has been confined in the State Prison, desire to make application for any form of postconviction relief, and should his counsel desire to be heard thereon, if the application is promptly served and filed, the court will hear the matter at its January term, commencing January 9, 1968, on a date and at a time when it is convenient to the court during that calendar."

As noted in the order the time for taking an appeal from the judgment of conviction expired before a Notice of Appeal was filed, but we did provide that if the defendant desired to apply for any form of post-conviction relief, if the application was promptly filed and served, we would hear the matter at our January 1968 term.

Over six months later defendant requested the district court to have copies of all records, minutes and transcript of the testimony prepared for him, at his expense, and the district court on July 10, 1968, ordered this to be done upon deposit by the defendant of the necessary funds to prepay such costs. Such deposit was made and the records, minutes and transcript of the testimony were so prepared. We point this out to indicate that defendant is not indigent and he was at all times and is now represented by retained counsel of his own choice.

Counsel filed a motion with this Court to reinstate the appeal, and on September 10, 1968, the following order was made:

"Lynn Perkins, appearing through counsel, has filed herein a motion for an order to reinstate appeal, file transcript and prepare briefs. From our file it appears that a motion to dismiss appeal was filed herein by the State of Montana on November 30, 1967, and no appearance having been made or cause

shown why the motion should not be granted, the Court issued its order on December 13, 1967, dismissing the appeal.

"Our order, among other things, provided:

" 'Should defendant, after he has been confined in the State Prison, desire to make application for any form of post-conviction relief, and should his counsel desire to be heard thereon, if the application is promptly served and filed, the court will hear the matter at its January term, commencing January 9, 1968, on a date and at a time when it is convenient to the court during that calendar.'

"No steps were taken in response to this suggestion. By reason of the facts set forth in our order of December 13, 1967, disclosing that defendant had permitted the time for filing an appeal to expire, no purpose would be served by reinstating the appeal since the Court would lack jurisdiction to proceed therein.

"The motion is therefore denied.

"Counsel for defendant may make application for post-conviction relief in accordance with the law and the rules of this Court as previously stated in our former order."

Finally, on November 15, 1968, eleven months after this Court had first offered to consider any application for post-conviction relief if it was promptly served and filed, defendant filed a motion in the district court seeking relief under the post-conviction statutes. To excuse the delay defendant alleges that his trial counsel refused to appear in any post-conviction relief proceeding and for that reason he was denied review by this Court of his conviction.

The state questions the jurisdiction of this Court to consider this appeal, submitting that defendant has waived any right he would have had by his failure to promptly proceed. We agree that this should be the rule but in view of the change in counsel and the fact that a post-conviction proceeding is involved, we will in this instance consider the various contentions of the defendant.

First we would observe that defendant did not submit any additional evidence in support of his motion in the district court, relying solely on the transcript of testimony, briefs and arguments, and he relies here upon these same records.

In support of his motion it is the contention of the defendant that (1) the court erred in giving instruction No. 4; (2) that defendant was denied his right to effective counsel; (3) that certain evidence was obtained by an unlawful search; (4) that the court erred in admitting plaintiff's exhibit "C", and (5) that there was insufficient evidence to sustain his conviction.

Turning to the matter of instruction No. 4, the record discloses that the court on settlement of instructions asked counsel for the defendant if there was any objection to the instructions. None was offered and the instruction was given.

Section 94-7201(4), R.C.M.1947, provides that no cause shall be reversed by this Court for any error in instructions which was not specifically pointed out and excepted to at the time of settlement of the instructions. We have consistently followed this statute, some of the latest cases in which we have done so are State v. Campbell, 146 Mont. 251, 405 P.2d 978, 22 A.L.R.3d 824; State v. Bubnash, 142 Mont. 377, 382 P.2d 830. In any event, the instruction quoted section 94-2704.1, R.C.M. 1947, and was proper in the circumstances here.

We will spend little time with the contention that defendant was denied effective counsel. He hired his own counsel for the trial and another to appear in this proceeding. While it is true his trial counsel failed to timely file a notice of appeal, in this post-conviction proceeding we are giving consideration to all contentions raised by the defendant so he has not been prejudiced because of such failure.

As to the complaint that there was an illegal search, the district court in this connection found as follows:

"1. No evidence offered by the State and admitted against the defendant on the trial of the case was obtained as a result of a search of any property protected by the Constitution of

the State of Montana and of the United States from unreasonable search and seizure.''

In our view the district court was correct. There was no search, the calves were in a corral in open sight. A corral can be likened to an open field and the Supreme Court of the United States in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, stated:

'' [I]t is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields.''

Thus evidence obtained from viewing a corral may be used as direct evidence in a prosecution. See also, State v. Johnson, 149 Mont. 173, 424 P.2d 728.

As to the admission of plaintiff's exhibit ''C'', a bill of sale—when this exhibit was offered in evidence the court asked counsel for the defendant: ''Any objection?'' Counsel answered: ''No objection.'' This Court stated in State v. Doe, 146 Mont. 501, 409 P.2d 439:

''Defendant cannot now put the trial court in error by his attempt to raise this question for the first time in this court.''

Since no objection was made at the trial we are not in a position to review the alleged error. See also State v. Walker, 148 Mont. 216, 419 P.2d 300; State v. Morran, 131 Mont. 17, 306 P.2d 679.

While defendant's counsel in his brief asserts that the bill of sale was obtained after the arrest of the defendant and before any Miranda warnings were given, testimony at the trial is otherwise. Defendant was arrested on a warrant, taken before a justice of the peace who gave him his Miranda warnings and released him on his own recognizance. The record further discloses that defendant thereafter returned to the corral at about 6:30 p. m. and the bill of sale, exhibit ''C'', was not delivered until 7 to 7:30 p. m.

As to the alleged insufficiency of the evidence to sustain the

conviction, the record discloses that one Ed Williamson owned a ranch near Chinook, Montana, where he ran cattle. All of the cows were branded but his calves had not yet been marked. On Sunday, November 27, 1966, Williamson went to check his cattle to see if they had been bothered by the fresh snow that had fallen the night before. He noticed that there were a number of cows standing around bawling and looking for their calves which appeared to be missing. The cows' udders were full which indicated that they had not been nursing their calves.

He observed tire tracks and footprints in the snow. It was subsequently determined that the tire tracks were similar to the tire tread of Perkins' pickup. The tracks led to a corral where the calves were unloaded.

Williamson had noticed that on Saturday afternoon defendant's pickup truck was washed and cleaned. When it was inspected Sunday night, it was seen that the pickup had recently been used to carry livestock, as evidenced by a quantity of straw and defecated matter in the bed of the truck.

Williamson went to Perkins' corral and found some bawling calves which indicated to him that they had lost their mothers. He came back Monday morning and observed Perkins in the corral feeding seventy or eighty calves. Williamson noticed that some calves had a right ear crop similar to the ones he placed on his calves, and some of the calves had a fresh brand which he estimated were two days old at the most. Some of these freshly branded calves had been recently castrated. Williamson testified: "I asked if I could bring some cows down to identify these calves and he [Perkins] agreed to that. * * * he * * * asked if it would be just as well if we took the calves to the cows, that it would be easier to take them up there rather than bring the cows down."

Williamson returned to his place and loaded the bawling cows in his truck. He drove them to Perkins' corral to put them with the calves. At that time Perkins offered to give Williamson a bill of sale for the calves if he would terminate his in-

vestigation and not unload his cows. Williamson unloaded the cows and they immediately paired up with the bawling calves —each cow claiming her own. The cows and calves were tagged and marked and were segregated again and later released. The calves returned to their respective mothers and began nursing. This "mothering up" affirmatively showed that the eleven calves found in Perkins' corral belonged to Ed Williamson.

Duane Alexander, a service station attendant, testified that he fixed a flat tire on the defendant's truck on a Friday or Saturday night during the last part of November, 1966. As he was fixing the tire, he saw nine or ten Hereford calves in the Perkins' pickup.

Defendant testified that he bought the calves from one Sweeney, a state stock inspector since 1959, but Sweeney denied the charge.

To briefly sum up the State's case, a review of the evidence shows that tire tracks similar to those of Perkins' pickup were found in the snow around the corral; his pickup, which was clean on Saturday, was covered with straw and manure on Sunday; Williamson's calves were found in Perkins' corral; branded and castrated; Perkins alleged he bought the calves from Sweeney, the state stock inspector, Sweeney denied this; and Perkins was seen in a service station on a Friday or Saturday night in November with a load of calves in the back of his pickup.

The jury found the evidence sufficient to warrant conviction; the district court concurred when it made its order from which this appeal was taken, and we are of the same mind.

The order denying post-conviction relief is affirmed.

MR. JUSTICES HASWELL, CASTLES and JOHN CONWAY HARRISON, concur.

MR. JUSTICE BONNER, being disqualified, did not participate.